UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

THE NEW YORK TIMES COMPANY and
CHARLIE SAVAGE,

        Plaintiffs,

    - against -

UNITED STATES DEPARTMENT OF
JUSTICE,

        Defendant.

------------------------------------------------------------X

**COMPLAINT**

14 CV 3948

JUDGE BRODERICK

Plaintiffs THE NEW YORK TIMES COMPANY and CHARLIE SAVAGE, by their undersigned attorneys, allege for their Complaint:

    1.    This is an action under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), to order the production of agency records from Defendant United States Department of Justice ("DOJ"), and its constituent part, the National Security Division ("NSD"), in response to a request properly made by Plaintiffs The New York Times Company and Charlie Savage (collectively "The Times").

## PARTIES

    2.    Plaintiff The New York Times Company publishes The New York Times newspaper. The New York Times Company is headquartered in this judicial district at 620 Eighth Avenue, New York, New York.

    3.    Plaintiff Charlie Savage is a reporter for The New York Times.

57731

1

4. Defendant DOJ is an agency of the federal government that has possession and control of the records that Plaintiffs seek.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B).

6. Venue is premised on the place of business of Plaintiffs and is proper in this district under 5 U.S.C. § 552(a)(4)(B).

7. Plaintiffs have exhausted all administrative remedies available in regards to the request at issue. DOJ failed to respond to the request within the time frames set by FOIA, and therefore Plaintiffs are deemed to have exhausted all administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C).

## FACTS

8. In 1978, Congress enacted the Foreign Intelligence Surveillance Act ("FISA") to govern the procedures for electronic surveillance conducted by the government for national security purposes.

9. The statute created the Foreign Intelligence Surveillance Court ("FISC"), whose members would be unilaterally selected by the Chief Justice from the ranks of Article III judges to serve staggered, seven-year terms. Each judge sits for a week at a time, and there is a three-member FISA Court of Review to hear any appeals of the FISC's rulings.

10. Congress empowered the FISC to grant or deny wiretap orders requested by federal law enforcement and intelligence agencies involved in national security matters. Later, Congress expanded this authority to encompass orders for physical searches as well.

11. These orders are to be granted or denied based on a simple standard akin to ex parte requests for warrants in ordinary Article III courts: whether facts offered by the government provide probable cause to believe that the target is a foreign power or an agent of a foreign power and that each of the facilities at which surveillance is directed is being used by that target.

12. From its inception, the FISC has been cloaked in a high degree of secrecy. Consistent with judicial practices in other courts for simple yes-or-no decisions about wiretap and search orders in ongoing investigations, FISC proceedings are not publicly noticed and only government lawyers are permitted to appear in the court, without adversarial process.

13. Virtually all of the court papers, including the government's filing and the court's orders and opinions, are designated as classified and withheld from public view. If the court grants a government request for authority, there is no one to file an appeal.

14. Over the past decade, there has been growing public attention to the expansion of government surveillance and data-collection activities set in motion following the terrorist attacks of Sept. 11, 2001.

15. In 2013, Edward Snowden, a former government contractor, leaked classified documents to journalists. The resulting news articles, and subsequent declassifications, brought to light that the FISC had, since 2006, granted government requests to systematically collect data in bulk on Americans' domestic phone calls and, from 2004 to 2011, granted government requests to systematically collect data in bulk on Americans' e-mail traffic. They also showed how the FISC had become deeply involved in interpreting and overseeing the warrantless surveillance program authorized by the FISA Amendments Act of 2008.

16. These and other revelations and declassifications showed that the court had evolved away from its basic task of approving surveillance, for which its structures and processes were designed. Rather than merely granting yes-or-no review of whether the standard had been met for wiretap or search orders, it was now also engaged in complex legal analysis interpreting constitutional rights and surveillance statutes, generating legal opinions that were dozens of pages in length and that have had nationwide, programmatic consequence for the privacy rights and civil liberties of Americans.

17. In the wake of those revelations, both members of Congress and civil liberties group intensified efforts to have the government provide a greater degree of transparency about what the FISC has been doing and how the court has interpreted the Constitution and federal statutes.

18. The government has begun selectively declassifying certain information related to surveillance activities and FISC, including certain redacted decisions.

19. However, many crucial documents related to FISC remain secret.

20. On March 12, 2014, Mr. Savage submitted a FOIA request (the "Request") to DOJ seeking certain materials pertaining to the FISC.

21. The Request sought "all government motions and briefs, judicial orders, and memorandum opinions" concerning the following FISC litigation:

>   1) The July 22, 2002 case, "In Re Electronic Surveillance and Physical Search of International Terrorist Groups, Their Agents, and Related Targets"
>
>   2) The "Raw Take" sharing order
>
>   3) The January 10, 2007 orders bringing the warrantless surveillance program under FISC authority whose existence were disclosed by Attorney General Alberto Gonzales in his Jan. 17, 2007,

letter to Congress https://www.documentcloud.org/documents/1018118-alberto-gonzales-psp-letter.html

4) The January 10, 2007, Domestic Content order and Foreign Content order discussed in the leaked draft NSA IG report https://www.documentcloud.org/documents/718895-igreport.html

5) The "Large Content" FISA orders, referenced in the leaked STELLARWIND and FISA/PAA/FAA classification guides https://www.documentcloud.org/documents/1061351-stellarwind-classification-guide.html; http://www.nytimes.com/interactive/2014/03/12/us/fisa-classification-doc.html

6) The decision by a FISC judge before whom the January 10, 2007, orders came up for renewal in April 2007, and who narrowed or altered them, as disclosed by then-DNI Mike McConnell in an interview with the El Paso Times published on August 22, 2007 http://www.elpasotimes.com/news/ci_6685679

7) Decisions approving targeting and minimization and implementation rules regarding the Protect America Act

8) The Sept. 4, 2008, memorandum opinion regarding the implementation of the FISA Amendments Act, referenced in the declassified ruling of October 3, 2011, by Judge Bates http://www.nytimes.com/interactive/2013/08/22/us/22nsa-opinion-document.html

9) All programmatic certifications under the Protect America Act

10) All programmatic certifications under the FISA Amendments Act, including targeting directed at foreign governments, factions, entities and foreign based political organizations; targeting directed at groups engaged in international terrorism or activities in preparation thereof; and targeting directed at persons, groups and entities involved in the proliferation of weapons of mass destruction, advanced conventional weapons, disruptive technologies and their deliver systems

11) The decision around early 2012 to extend raw take sharing access to the National Counterterrorism Center

12) Matters associated with bulk collection under Section 215 of the Patriot Act (FISA Business Records provision) for records related to

financial transfers

13) Matters associated with bulk collection under Section 215 of the Patriot Act (FISA Business Records provision), other than those regarding telephony metadata that have already been declassified and released by the Director of National Intelligence

14) Matters associated with bulk collection under the FISA PR/TT provision, other than those regarding e-mail metadata that have already been declassified and released

15) Any other motions, opinions and orders after Sept. 11, 2001, that dealt with programmatic issues rather than individual wiretap requests

22. On April 10, 2014, NDS responded by acknowledging the Request and granting expedited processing.

23. There has been no further communication from NDS or any other unit of DOJ regarding the Request.

24. DOJ's substantive response to the Report Request, either producing documents or denying the request in accordance with FOIA, was due twenty (20) business days after receipt of the request.

## COUNT

25. Plaintiffs repeat, reallege, and reincorporate the allegations in the foregoing paragraphs as though fully set forth herein.

26. DOJ is an agency subject to FOIA and must therefore release in response to a FOIA request any disclosable records in its possession at the time of the request and provide a lawful reason for withholding any other materials as to which it is claiming an exemption.

27. Under 5 U.S.C. § 552(a)(6)(A), DOJ was required to provide documents or issue a denial within 20 business days of receiving the Request.

28. Under 5 U.S.C. § 552(a)(6)(C), a person making a request for materials under FOIA "shall be deemed to have exhausted his administrative remedies with respect to such a request if the agency fails to comply with the applicable time limit provisions" of FOIA.

29. Accordingly, The Times is deemed to have exhausted its administrative remedies as to the Request.

30. DOJ has asserted no lawful basis under FOIA for withholding documents asked for by the Request.

31. DOJ's failure to provide responsive documents violates FOIA.

32. Accordingly, The Times is entitled to an order compelling the DOJ to undertake an adequate search of its records and produce the documents sought by the Report Request.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

a. Declare that the documents sought by the Request, as described in the foregoing paragraphs, are public under 5 U.S.C. § 552 and 5 U.S.C. § 552(a) and must be disclosed;

b. Order the DOJ to undertake an adequate search for the requested records and provide those records to Plaintiffs within 20 business days of the Court's order;

c. Award Plaintiffs the costs of this proceeding, including reasonable attorney's fees, as expressly permitted by FOIA; and

d. Grant Plaintiffs such other and further relief as this Court deems just and proper.

Dated: New York, New York
June 2, 2014

*[signature]*

David E. McCraw, Esq.
D. Victoria Baranetsky, Esq.
Legal Department
The New York Times Company
620 8th Avenue, 18th Floor
New York, NY 10018
phone: (212) 556-4031
fax: (212) 556-1009
e-mail: mccraw@nytimes.com
*Counsel for Plaintiffs*